NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JAN 6 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| JASMINE PAUL SANCHEZ, | No.    23-15168 |
| Plaintiff-Appellant, | D.C. No.<br>3:22-cv-00259-MMD-CSD |
| v. | |
| CHET RIGNEY; CURTIS RIGNEY;<br>WILLIAM REUBART; DAVID<br>DRUMMOND; TASHEENA COOKE;<br>JEROME HICKS, | MEMORANDUM* |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the District of Nevada
Miranda M. Du, Chief District Judge, Presiding

Argued and Submitted October 10, 2025
Las Vegas, Nevada

Before: BENNETT, SANCHEZ, and H.A. THOMAS, Circuit Judges.
Dissent by Judge BENNETT.

Plaintiff Jasmine Paul Sanchez appeals the district court's adoption of a

magistrate judge's report and recommendation that Sanchez's pro se lawsuit be

dismissed sua sponte, and with prejudice, as a sanction for Sanchez's

---

*       This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

nonappearance at his initial case management conference ("CMC"). We have jurisdiction under 28 U.S.C. § 1291. Because the district court abused its discretion by imposing terminating sanctions in this matter, we reverse and remand for further proceedings.

1. The district court abused its discretion when it reviewed the magistrate judge's report and recommendation for clear error after Sanchez made a timely objection. "[W]hen a magistrate judge issues a report and recommendation on a dispositive matter, a district judge must 'make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.'" *CPC Pat. Techs. Pty Ltd. v. Apple, Inc.*, 34 F.4th 801, 804 (9th Cir. 2022) (citing 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(3)). Within the 14-day objection window following the magistrate judge's report recommending terminating sanctions, Sanchez made four court filings. Sanchez's first filing asserted that his legal documents and evidence had been "taken, damaged or destroyed" in retaliation for his attendance at the show cause hearing. Sanchez's fourth filing, although captioned as a request for video footage, plainly raised objections to the report and recommendation. The filing mentioned the magistrate judge by name and challenged the report's determination that Sanchez

2

had given false testimony about his reasons for missing the CMC.[1]  Sanchez also wrote that the magistrate judge "still refused to take in the seriousness of my case and is disregarding all my plea[]s for help and safety . . . and recommends that my case be dismissed after knowing the seriousness of this case and seeing the proof beyond a reasonable doubt!"[2]

It is well-established that "[a] document filed *pro se* is 'to be liberally construed.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  "Federal courts sometimes will ignore the legal label that a pro se litigant attaches to a motion . . . . in order to avoid an unnecessary dismissal [or] to avoid inappropriately stringent application of formal labeling requirements . . . ." *Castro v. United States*, 540 U.S. 375, 381 (2003).  Here, Sanchez's filing was sufficient to put the district court on notice of Sanchez's objections to the magistrate judge's report and recommendation and

---

[1] Our dissenting colleague suggests that it was impossible to discern any clear objection in the filing's "deluge of words."  We disagree.  In the relevant portion, Sanchez expressly referenced the statement he filed to explain his absence from the CMC and asserted that the threats against his life were genuine and that the magistrate judge improperly disregarded his allegations.

[2] Sanchez offered a nonfrivolous explanation for his nonappearance.  Sanchez testified and explained in his filed statement that he did not appear because officers threatened to kill him if he attended the CMC—allegations closely linked to those made in his complaint that he had been retaliated against, threatened with death, beaten, and had his arm broken for pursuing legal claims against prison staff.  Such serious allegations should not be terminated on the basis of a credibility finding at a limited show cause hearing, particularly where one of the two officer witnesses is a named defendant in the underlying lawsuit.

thereby trigger the district court's obligation to perform de novo review.

2. Had the district court's error ended there, we would typically remand for the district court to apply the correct legal standard. *See CPC*, 34 F.4th at 810. However, the district court further abused its discretion in determining that dismissal with prejudice was the only sanction available for Sanchez's failure to appear at his initial CMC. The record demonstrates that a terminating sanction was outside the acceptable range of sanctions under the circumstances of this case.

"Courts are to weigh five factors in deciding whether to dismiss a case for failure to comply with a court order: '(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions.'" *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1226 (9th Cir. 2006) (quoting *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 130 (9th Cir. 1987)). In recommending dismissal with prejudice, the magistrate judge cited the delay caused by Sanchez's nonappearance, the need to manage its docket, prejudice to the defendants, and the unavailability of less drastic sanctions. The district court found no clear error in these findings. We conclude that while factor one is neutral and factor two supports the district court, factors three, four, and five weigh decisively in favor of nondismissal. *See Valley Eng'rs Inc. v. Elec. Eng'g Co.*, 158

4

F.3d 1051, 1057 (9th Cir. 1998) (describing how factors "3 and 5, prejudice and availability of less drastic sanctions, are decisive").

While the public has an interest in an expeditious resolution to litigation, the one-month delay caused by Sanchez's nonappearance was minimal and came at an early stage of the litigation when discovery had yet to take place and no trial date had been set. Factor one is therefore neutral. But because the district court has a strong interest in managing its docket, factor two favors the district court.

Turning to the third factor, "[a] defendant suffers prejudice if the plaintiff's actions impair the defendant's ability to go to trial or threaten to interfere with the rightful decision of the case." *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990). While "[t]he law presumes injury from unreasonable delay," *Hernandez v. City of El Monte*, 138 F.3d 393, 401 (9th Cir. 1998), a one-month delay at the start of litigation is insufficient to presume injury. Though defendants expended additional time preparing for and attending the show cause hearing, the district court failed to explain how Sanchez's single nonappearance "impair[ed] the defendant's ability to go to trial or threaten[ed] to interfere with the rightful decision of the case." *Adriana Int'l Corp.*, 913 F.2d at 1412. As explained above, the one-month delay caused by the nonappearance was minimal. And defendants have not presented evidence that they were actually prejudiced in any way.

5

The district court correctly determined that the fourth factor—"the public policy favoring resolution on the merits"—supports Sanchez. *See Hernandez*, 138 F.3d at 401.

The fifth factor, the availability of less drastic sanctions, also weighs decisively against dismissal. This factor "involves consideration of three subparts: whether the court explicitly discussed alternative sanctions, whether it tried them, and whether it warned the recalcitrant party about the possibility of dismissal." *Valley Eng'rs Inc.*, 158 F.3d at 1057 (citing *Malone*, 833 F.2d at 132). It is undisputed that Sanchez received no warning prior to missing the CMC that failure to appear at the hearing could result in dismissal of his action, and the district court attempted no other sanction prior to dismissing Sanchez's case sua sponte. The district court's analysis of the inadequacy of the alternative sanctions—finding that Sanchez's incarceration renders all deterrents ineffective—did not meaningfully consider alternatives and finds no support in the record.

Although Sanchez qualified as an indigent litigant, the district court should have more seriously considered whether a fine or order covering defendants' litigation costs was available as a less drastic sanction to encourage compliance with court orders. While the court concluded that a contempt order "would not have an effect on an indigent litigant who is already incarcerated[,]" nothing in the record supports this unexplained determination. On the contrary, the record

6

affirmatively demonstrates that a warning by the court could have been effective: when Sanchez was warned that his case could be dismissed if he failed to appear at his show cause hearing, he made an appearance.[3]

The district court's order dismissing this case is therefore reversed. We further direct the district court to appoint counsel to represent Sanchez in further proceedings in this matter.

**REVERSED AND REMANDED.**

---

[3] Our dissenting colleague relies on evidence wholly outside the record to suggest that Sanchez is a "vexatious litigant" who should not be believed. At no point did defendants raise or argue that Sanchez is a "vexatious litigant" or that he allegedly "lied" in prior lawsuits, nor did the magistrate judge or district court mention Sanchez's prior litigation history or litigation status as a factor in dismissing this action. Even if Sanchez were a "vexatious litigant," our dissenting colleague overlooks that the district court screened Sanchez's complaint and found that it stated colorable constitutional claims. Our colleague cites no authority for the proposition that a vexatious litigant whose colorable claims survive a screening order should have fewer due process protections than other litigants. Because the district court did not review the magistrate judge's report and recommendation de novo, as it was required to do after Sanchez objected to the magistrate's credibility determination, we cannot assume that Sanchez "lied" to the court.

*Sanchez v. Rigney*, No. 23-15168

BENNETT, Circuit Judge, dissenting:

For years, the district court in Nevada handled Plaintiff's many abuses of process with patience and prudence. In this case, Plaintiff once again lied to the court and failed to comply with court orders. Plaintiff also threatened—in open court—to kill prison officers. Assessing the situation, the magistrate judge recommended that the district court dismiss this case sua sponte and with prejudice. The district court reviewed the report and recommendation (R&R) for clear error and, finding none, adopted the magistrate judge's findings and recommendations in full. On appeal, Plaintiff asks that we gloss over his history of vexatious litigation—which the magistrate judge and district court were plainly aware of—and reverse. I would not do so. Even under the liberal pleading standard afforded pro se litigants, Plaintiff failed to object timely to the R&R. Moreover, under any standard of review, the district court's conclusion was proper. Plaintiff's litigation misconduct not only justified—but required—dismissal with prejudice. Thus, I respectfully dissent.

1.      Between June 2018 and April 2023, Plaintiff filed thirty-three lawsuits in the United States District Court for the District of Nevada against Ely State Prison (ESP), ESP staff, and two magistrate judges of that court. *Sanchez v. Sharp*, No. 21-cv-408, 2023 WL 7390138, at *9 (D. Nev. Sept. 21, 2023) (tabulating the

1

cases), *report and recommendation modified in part and adopted*, 2023 WL 7039779 (D. Nev. Oct. 25, 2023). At a global settlement conference in December 2020, fourteen of his earlier lawsuits were settled. *Id.* Yet Plaintiff continued to file lawsuits. *Id.* None succeeded and all were dismissed by the district court— one for lack of jurisdiction, one for failure to effect service, four for failure to state a claim, five by summary judgment finding no constitutional violations, seven for failure to pay the filing fee, and this case as a sanction for failure to comply with court orders. Appendix (App.).[1] Noninclusive of this case, Plaintiff appealed six times. *Id.* Each time we dismissed—three times as frivolous, *Sanchez v. Ely State Prison*, No. 22-15412, 2022 WL 4289619 (9th Cir. Aug. 19, 2022) (order); *Sanchez v. Rose*, No. 22-15840, 2022 WL 4073357 (9th Cir. Aug. 17, 2022) (order); Order, *Sanchez v. Ely State Prison*, No. 19-17131, Dkt. No. 16 (9th Cir. Mar. 6, 2020), twice for lack of jurisdiction, App. at 1, and once for failure to prosecute, *Sanchez v. Reubart*, No. 22-15841, 2022 WL 17424542 (9th Cir. Sept. 19, 2022) (order). In all, Plaintiff accumulated four strikes under 28 U.S.C. § 1915(g). *See* App.

In these many cases, Plaintiff proved himself to be a "vexatious litigant." *Sharp*, 2023 WL 7039779, at \*3. He "routinely refused to participate in, or adhere to the [district court's] rules and orders." *Id.* (citation omitted). He "refus[ed] to

---

[1] I take judicial notice of the district court's records in the cases listed in the Appendix.

2

accept service of documents or attend hearings." *Id.* "He frequently d[id] not oppose dispositive motions" and regularly failed to prosecute his lawsuits "for at least six months, further evidencing that he is not diligently prosecuting his claims." *Id.*

Indeed, at least several times, Plaintiff lied to the court. For example, in one complaint, Plaintiff alleged that he was placed in the shower and then forced to undress in front of female staff and on camera—all while Correction Officer Chet Rigney licked his lips and made sexual comments. State Civil Rights Complaint at 3–5, *Sanchez v. Rigney*, No. 22-cv-109 (filed D. Nev. Feb. 22, 2022), Dkt. No. 1-1. That complaint also alleged that Rigney choked him for no reason and refused to take photos of the resulting injuries. *Id.* at 5–6. But when the defendants moved, unopposed, for summary judgment and presented video footage of the incident, Plaintiff's account was shown to be untrue. *Sanchez v. Rigney*, No. 22-cv-109, 2023 WL 10510317, at *1–2, *4–6 (D. Nev. Sept. 6, 2023). In this case, Plaintiff once again accuses Rigney of misconduct—this time alleging that Rigney broke his arm in retaliation for filing case number 22-cv-109, the case in which Plaintiff was found to have alleged lies about being stripped and choked by Rigney.

To justify ignoring this history, the majority argues that I "rel[y] on evidence wholly outside the record to suggest that Sanchez is a 'vexatious litigant' who should not be believed." Maj. at 7 n.3. But there is nothing to "suggest." In

3

October 2023, responding to Plaintiff's repeated abuses of process, the district court declared him a vexatious litigant and required him to obtain leave before initiating any litigation against ESP or its employees. *Sharp*, 2023 WL 7039779, at *3. Moreover, evidence of Plaintiff's vexatiousness is properly before us because the record includes many references to his other lawsuits.[2] And we may "take judicial notice of [our] own records in other cases, as well as the records of an inferior court in other cases." *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980). Doing so is especially proper where, as here, such records relate to "litigation between the same parties who are now before us." *See Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 157 (1969).

2.      This case is the twenty-eighth out of the thirty-three filed by Plaintiff. *See* App. In August 2022, the district court screened his complaint and allowed him to proceed with claims alleging retaliation, excessive force, failure to protect, and deliberate indifference to serious medical needs. On November 22, 2022, the magistrate judge ordered the parties to file a case management report by December 13 and appear for a mandatory telephone conference on December 20. Plaintiff did

---

[2] ER 19 (Plaintiff stating "I filed a lawsuit previous to this"); ER 20 ("I just went to Palo Alto to court after court after court, and it seems like the court is not taking my lawsuits into any type of consideration"); ER 54 (screening order noting that "Sanchez has accumulated four strikes under 28 U.S.C. § 1915(g)"); FER 4 (Plaintiff's application for a temporary restraining order referencing at least two other lawsuits filed by him).

4

neither. The prison's law librarian provided Plaintiff with a copy of the minutes from the December 20 hearing but, consistent with his behavior in other cases, he refused to sign for the document.

The magistrate judge set a show cause hearing for January 12, 2023. Before that hearing, Plaintiff filed a document stating that ESP staff threatened to kill him if he appeared for the December 20 telephone conference. At the show cause hearing, the magistrate judge received testimony from several ESP staff who stated that Plaintiff was given the opportunity to attend the December 20 telephone conference but voluntarily refused. For his part, Plaintiff once again accused ESP staff of threatening to kill him. Plaintiff then went on what can be described only as a rant that included the statement, "lately I've been thinking about homicide is my only escape out here. It's either kill [ESP staff] before they kill me." Because the majority omits this fact, I pause to emphasize that Plaintiff threatened—in open court—to murder Defendants.[3]

After the show cause hearing, the magistrate judge issued the R&R recommending dismissal of Plaintiff's claims sua sponte and with prejudice. The magistrate judge found Plaintiff's testimony "not credible" and his accusations about death threats to be "false." Thus, Plaintiff had "not demonstrated good

---

[3] At oral argument, Plaintiff's counsel was asked whether Plaintiff had said, "with regard to the correctional officers, he was considering homicide, right?" Plaintiff's counsel responded, "He did say that."

cause" for his failure to attend the December 20 conference and, moreover, had "provided false testimony about his refusal to attend." In recommending dismissal with prejudice, the magistrate judge concluded that Defendants were prejudiced "by the expenditure of time and effort" in preparing for and attending the telephone conference and show cause hearing. The magistrate judge also determined that less drastic sanctions would not be effective because monetary and contempt sanctions would not deter Plaintiff, "an indigent inmate litigant," and other non-monetary sanctions would not adequately address Plaintiff's noncompliance with court orders. Based on "Plaintiff's demeanor at the [show cause] hearing," the magistrate judge also found that "a warning or reprimand would have no impact."

The R&R informed the parties that "they may file . . . specific written objections to this [R&R] within fourteen days of being served with a copy of the [R&R]." The R&R further instructed that such "objections should be titled 'Objections to Magistrate Judge's Report and Recommendation' and should be accompanied by points and authorities for consideration by the district judge." Within the fourteen-day period to object, Plaintiff filed four documents: (1) a letter styled as a "motion" claiming that Plaintiff's property and evidence were "taken, damaged, or dest[roy]ed;" (2) a motion to use priority shipping envelopes; (3) an ex parte motion for appointment of counsel; and (4) "a motion to obtain video

6

feed." None of these four filings attempted to comply with the R&R's clear instruction to file "specific written objections" titled as such and "accompanied by points and authorities."

On January 27, 2023, because Plaintiff had failed to object to the R&R, the district court reviewed the R&R for clear error. Finding none, the district court adopted the R&R and dismissed Plaintiff's complaint with prejudice. Plaintiff timely appealed.

3. The majority states that Plaintiff's motion for video footage "plainly raised objections to the report and recommendation."[4] Maj. at 2. The memorandum portion of that motion consisted of a long rant that stated, in full:

> Between 8:00Am and 9:51Am on 1-12-23 as I was attending a mandatory court order By Magistrate Judge Craig S. denney stating that "I Mr Sanchez would not Be Retaliated for my attendance and if I was to refused he would dismiss my case"! even after I send a statment stating that "I was threaten By ely state prison on 12-14-22 that they was going to kill me and destory my personal property if I was to attend my court order meeting"! in which they did exactly that By coming in my cell and taking some and destorying the rest and now this same Judge Craig S. denney is trying to insure my death by trying to dismissed my case knowing that my life is in danger that once my case get's dismissed the staff here at ely state prison is planing on killing me! I've have put in motion's after countless motion's to seek protection by mean's of legal actions and no matter how much proof I've have sent to the court Judge Craig S. denney from time and

---

[4] Thus, the majority implicitly concedes that the other three filings, even liberally construed, failed to lodge specific objections to the R&R.

date's on everything as well as the staff statement's them self magistrate Judge craig S. denney still refused to take in the seriousness of my case and is disregarding all of my plea's for help and safty! and I fear that he is related in some way to the defendant's, Because no other judge would knowing the seriousness of this case and then Just disregarded it as nothing to Be taken in further action's other then someone who is closely related in some way to the defendant's! other wise why did he and the staff at ely state prison denyed any access to reach a (counsel/attorney) to help me with the Legal process of this case, that I dont know what to do pass filing the 1983 that I was going to need counsel/attorney help with the case! But still Magistration Judge Craig S. denney denied my motion for appointed counsel/attorney assistance, the same judge that is recommend that my case be dismissed after knowing the seriousness of this case and seeing the proof beyond a reasonable doubt! By obtain video feed of unit 2A that's faceing cell 2A you'll see once I was out of my cell the C/O come's right in and start destorying, taking, and retaliating on me for going to attend a court order telephonic conference date set forth for 1-12-23 at 9:00Am in which I was taken out of my cell Between 8:00Am and 8:40Am But as I returned to my cell at 9:51Am that's when I discovered my personal property destoryed and taken! this motion is for a request for the court to see first hand on how ely state prison staff all stick together on to try and intimate us prisoner's from seeking outside legal protection and assistance By threat's of death and destorying personal property! They have Been Know for year's to carry out Both form's of threat's even Before I came! I'm Just the only one of us Brave enough to continue to seek Justice By Legal mean's even tho I don't know everything about the Legal system I am still willing to try and fight for my Life and Livelyhood nomatter how Long it take's to get Justice! And if I die my family and friend's will continue to seek Justice for this case and all those who are involve from Judge's, attorney's, clerk, esp staff, and ect! I've sent them enought info to insure that

> they would Know who is to Blame for my death Like Jorge
> f.

Searching this deluge of words for specific objections to the R&R yields nothing relevant to our review. At most, Plaintiff lodged a general complaint regarding Magistrate Judge Denney's handling of this case and other cases filed by Plaintiff. Such a general objection does not trigger the district court's duty to conduct de novo review. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any *part* of the magistrate judge's disposition that has been *properly objected to*." (emphasis added)).

The majority argues that Plaintiff "expressly referenced the statement he filed to explain his absence from the CMC and asserted that the threats against his life were genuine and that the magistrate judge improperly disregarded his allegations." Maj. at 2–3 n.1. But though Plaintiff referenced his pre-hearing statement, nothing raised a specific objection to the R&R. Plaintiff merely lodged accusations that Magistrate Judge Denney conspired to ensure his death and disregarded the seriousness of his case. Even under the liberal standard afforded pro se litigants, such general complaints which merely "restate[d] his grievance against" ESP staff and magistrate judges of the district court did not suffice to raise specific objections to any finding or recommendation made in the R&R. *Cf. Iwachiw v. N.Y. State Dep't of Motor Vehicles*, 396 F.3d 525, 528 (2d Cir. 2005) (per curiam) ("In his brief on appeal, plaintiff again restates his grievance against

9

alleged 'unlawful practices' that resulted in the taking of his vehicle. At no point, however, do his conclusory allegations address the substance of the District Court's Memorandum of Decision and Order that dismissed plaintiff's actions.").[5]

Moreover, although we liberally construe documents filed pro se, when a pro se litigant has been informed of requirements that he must meet, his failure to comply justifies imposing adverse consequences. *See Draper v. Rosario*, 836 F.3d 1072, 1080 & 1080 n.5 (9th Cir. 2016). The R&R informed Plaintiff of the requirements for objecting to a magistrate judge's findings and recommendations—namely, to "file and serve specific written objections with supporting points and authorities." D. Nev. Loc. R. IB 3-2; *see also* 28 U.S.C. § 636(b)(1)(C) (allowing parties to file written objections to a magistrate judge's "proposed findings and recommendations *as provided by rules of court*" (emphasis added)). Plaintiff's motion for video footage failed to comply with these requirements.

This reality proves wrong the majority's mischaracterization of my argument as stating that "a vexatious litigant whose colorable claims survive a screening order should have fewer due process protections than other litigants." Maj. at 7

---

[5] Plaintiff lodged only one specific objection. He complained that "Magistration Judge Craig S. denney denied my motion for appointed counsel/attorney assistance [sic]." But the R&R did not address appointment of counsel because Plaintiff moved for appointment of counsel eleven days *after* the R&R had issued.

10

n.3.  Plaintiff did not receive fewer due process protections than other litigants. Rather, the magistrate judge afforded Plaintiff ample notice and every opportunity to raise specific objections to the R&R.  Plaintiff simply failed to do so.

The district court needed to review de novo only "those portions of the report or specified proposed findings or recommendations to which objection is made."  *See CPC Patent Techs. Pty Ltd. v. Apple, Inc.*, 34 F.4th 801, 804 (9th Cir. 2022) (quoting 28 U.S.C. § 636(b)(1)(C)) (citing Fed. R. Civ. P. 72(b)(3)).  But Plaintiff failed to object properly to *any* specific findings or recommendations made in the R&R.  Thus, the district court was not required to conduct de novo review.  *See* 28 U.S.C. § 636(b)(1).

4.     If the majority stopped there and held only (and wrongly in my view) that the district court had to conduct de novo review, the district court could reconsider the appropriateness of a terminating sanction on remand, *see CPC Patent Techs.*, 34 F.4th at 810, including by taking express judicial notice of Plaintiff's long history of vexatious litigation and explicitly considering his misconduct and noncompliance against that backdrop.  Instead, I believe the majority oversteps and contravenes circuit authority by placing a terminating sanction out of reach.  *See United States v. Rivera-Guerrero*, 377 F.3d 1064, 1071 (9th Cir. 2004) (stating that when the district court misapplies a deferential standard of review, "we must vacate the district court's order and remand").

11

On this issue, the majority first errs in misconcluding that Plaintiff's only misconduct was his "nonappearance at his initial case management conference." Maj. at 1. Plaintiff's misconduct was far more severe. The magistrate judge found that Plaintiff also *provided false testimony* by accusing two correction officers of threatening to harm or kill him if he attended the December 20 conference. Plaintiff additionally failed "to comply with the court's order[] to file a case management report." Most egregiously, during the show cause hearing, Plaintiff *threatened to kill* Defendants.

The majority, however, ignores all this and implicitly "reverses [the] magistrate judge's credibility determinations, made after receiving live testimony . . ., without viewing key demeanor evidence." *See United States v. Thoms*, 684 F.3d 893, 906 (9th Cir. 2012) (holding that such reversals abuse judicial discretion in nearly all circumstances); *see also United States v. Ramos*, 65 F.4th 427, 436 (9th Cir. 2023) ("[W]e cannot hold that the magistrate judge was wrong to reject [the defendant's] testimony" when the R&R "provided ample reason to find [the defendant] not credible."). In support of this reversal, the majority offers only that "serious allegations should not be terminated on the basis of a credibility finding at a limited show cause hearing." Maj. at 3 n.2. But our cases instruct that "[b]ecause the magistrate [judge] sees and hears live testimony, he has an adequate basis for making credibility determinations." *United States v.*

12

*Mejia*, 69 F.3d 309, 316 (9th Cir. 1995).  Moreover, 28 U.S.C. § 636 does not require district courts to conduct a de novo hearing. *United States v. Raddatz*, 447 U.S. 667, 676 (1980).  Rather, it "permit[s] whatever reliance a district judge, in the exercise of sound judicial discretion, cho[oses] to place on a magistrate [judge]'s proposed findings and recommendations." *Id.*

Thus, even had Plaintiff objected properly to the magistrate judge's adverse credibility determination, the correct course would be to remand for the district court to make a "de novo determination." *Id.*  (quoting § 636(b)(1)).  If necessary, further fact-finding could take place in the district court, which unlike this Court "has the option of adding to th[e] record through live testimony."  *See Thoms*, 684 F.3d at 905.  But departing from our usual practice, *see CPC Patent Techs.*, 34 F.4th at 810, the majority reverses on appeal the magistrate judge's credibility determination.  Doing so contravenes circuit precedent, which instructs us in like circumstances to "vacate the district court's order and remand."  *See Rivera-Guerrero*, 377 F.3d at 1071.

The majority compounds its error in its incorrect review of the R&R's application of the *Malone* factors.  We review "the district court's ultimate decision" to apply a terminating sanction "only for abuse of discretion." *Transamerica Life Ins. Co. v. Arutyunyan*, 93 F.4th 1136, 1146 (9th Cir. 2024).  We do not require the district court to "expressly recite and individually discuss each"

13

*Malone* factor; "[i]t suffices if the district court's analysis, considered in the context of the record as a whole, permits us 'independently to determine if the district court has abused its discretion' in light of these factors." *Id.* at 1146–47 (quoting *Allen v. Bayer Corp.*, 460 F.3d 1217, 1226 (9th Cir. 2006)). Contravening this standard of review, the majority steps into the district court's shoes and reviews de novo the R&R's application of the *Malone* factors.[6]

In any case, I believe the majority also misapplies the *Malone* factors. "The first two *Malone* factors are typically considered together, and because they relate to docket-management issues that the district court 'is in the best position' to assess, we give particular deference to the district court's judgment concerning them." *Id.* at 1147 (quoting *Allen*, 460 F.3d at 1227). The first two factors heavily favored dismissal with prejudice because Plaintiff, a vexatious litigant, failed to comply with court orders in an action that he had brought, and his nonappearance at the initial conference thwarted the district court's ability to manage Plaintiff's noncompliance. *See Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990) (noting the general rule that, in a case involving violations of court orders, "the first two factors support sanctions"). Moreover, Plaintiff's misconduct

---

[6] Because the majority concludes that the district court needed to review de novo the entire R&R, I assume that the majority applies a de novo standard of review in its weighing of the *Malone* factors.

14

exceeded mere noncompliance—he provided false testimony and lodged a death threat against ESP staff.

"The third *Malone* factor—the 'risk of prejudice' to the other party—examines the extent to which the recalcitrant parties' conduct creates a risk of either 'impair[ing] the [opposing party's] ability to go to trial' or 'interfer[ing] with the rightful decision of the case.'" *Arutyunyan*, 93 F.4th at 1147 (alterations in original) (quoting *Allen*, 460 F.3d at 1127). Here, Defendants had suffered prejudice from having to defend against Plaintiff's false accusations. And the risk of future prejudice was high because Plaintiff had attempted to interfere with the correct resolution of the case by providing false testimony and threatening to kill ESP employees. *See Valley Eng'rs Inc. v. Electric Eng'g Co.*, 158 F.3d 1051, 1058 (9th Cir. 1998) (affirming terminating sanction because "[t]here is no point to a lawsuit, if it merely applies law to lies."); *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1097 (9th Cir. 2007) ("In deciding whether to impose case-dispositive sanctions, the most critical factor is not merely delay or docket management concerns, but truth."). The majority, however, weighs only the risk of delay, which, in any event, also weighed in favor of dismissal. *See In re Eisen*, 31 F.3d 1447, 1452 (9th Cir. 1994). Although the delay was short, Plaintiff had regularly failed to prosecute other lawsuits "for at least six months." *Sharp*,

15

2023 WL 7039779, at *3.  The third factor therefore strongly favored dismissal with prejudice.

The fourth factor weighed against dismissal, but "provide[d] only 'little support' for that conclusion."  *See Arutyunyan*, 93 F.4th at 1147 (quoting *Allen*, 460 F.3d at 1228).  This factor "'lends little support' to a party whose responsibility it is to move a case toward disposition on the merits but whose conduct impedes progress in that direction."  *Id.* (quoting *Allen*, 460 F.3d at 1228).  Plaintiff's failure to appear at the telephone conference impeded progress toward disposition on the merits in a case that he had brought and had the responsibility to prosecute.  Thus, this factor provided Plaintiff only "little support."  *See id.* at 1147.

The fifth factor also favored dismissal with prejudice.  Although "it is not always necessary for the court to impose less serious sanctions first, or to give any explicit warning," *Valley Eng'rs*, 158 F.3d at 1057, the R&R explicitly discussed alternative sanctions and properly determined that such sanctions would not adequately address Plaintiff's misconduct.  This was not a cursory determination.  Across Plaintiff's vexatious filing and prosecution of thirty-three cases, "the district court applied a measured and gradational approach in responding to [Plaintiff's] non-compliance with the court's orders and the local rules."  *See Arutyunyan*, 93 F.4th at 1148.  The R&R also properly concluded "that a warning or reprimand would have no impact."  *See Valley Eng'rs*, 158 F.3d at 1057 ("The

16

significance of warning is that a sanction may be unfair if the party could not have realized that it was in jeopardy of so severe a consequence . . . .").  Plaintiff knew that his failure to comply with court orders could result in dismissal with prejudice because it had happened to him many times before.  App.  Indeed, when this case was dismissed, Plaintiff had accumulated four strikes under 28 U.S.C. § 1915(g).  Accordingly, the fifth *Malone* factor also favored dismissal with prejudice.  *See Adriana*, 913 F.2d at 1413.  In sum, even reviewed de novo, the *Malone* factors strongly supported dismissal with prejudice.

Thus, I believe this record does not justify reversal under any standard of review.  *See Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976) (per curiam) ("[T]he most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases . . . .").  But again, our review is "only for abuse of discretion."  *Arutyunyan*, 93 F.4th at 1146.  Under the proper standard of review, I believe the record falls far short of creating "a definite and firm conviction that the district court made a clear error in judgment" in adopting the R&R and imposing a terminating sanction, which would be required for us to reverse.  *See Adriana*, 913 F.2d at 1408.[7]

---

[7] I note that the majority's decision forces the district court, on remand, to reengage a vexatious litigant against whom a filing injunction has already been entered.  *Sharp*, 2023 WL 7039779, at *3.  It bears repeating that the filing injunction prevents Plaintiff, without first obtaining leave of court, from initiating any new litigation against ESP and its staff, including Defendants.  *Id.*

17

5.     I believe the majority commits one final error by "direct[ing] the district court to appoint counsel to represent [Plaintiff] in further proceedings in this matter." Maj. at 7. "A district court's refusal to appoint counsel pursuant to 28 U.S.C. § 1915(e)(1) is reviewed for an abuse of discretion." *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009). Courts appoint counsel only in "exceptional circumstances." *Id.* (citation omitted). "When determining whether 'exceptional circumstances' exist, a court must consider 'the likelihood of success on the merits as well as the ability of the petitioner to articulate his claims pro se in light of the complexity of the legal issues involved.'" *Id.* (quoting *Weygandt v. Look*, 718 F.2d 952, 954 (9th Cir. 1983)).

After Plaintiff's complaint was dismissed with prejudice, Plaintiff's motion for appointment of counsel was denied as moot. Thus, the district court has yet to consider the merits of Plaintiff's motion. The majority nonetheless grants it. In so doing, the majority disregards what experience has taught us—that "appointment of counsel" is a matter "best addressed by the district court in the first instance." *Brown v. Roe*, 279 F.3d 742, 746 (9th Cir. 2002).

In any event, the denial was proper because Plaintiff's "claims were relatively straightforward" and "he articulated his claims well." *See Harrington v. Scribner*, 785 F.3d 1299, 1309 (9th Cir. 2015). Indeed, as a repeat litigant, Plaintiff had "engaged with opposing counsel and the court throughout years of legal

18

proceedings." *See id.* And despite his repeated misconduct, Plaintiff knew how to advance his case—when he wanted to. App. Accordingly, the district court "did not abuse its discretion by denying him appointed counsel." *See Harrington*, 785 F.3d at 1309.

Appointment of counsel requires "exceptional circumstances." *Palmer*, 560 F.3d at 970. As detailed above, there were *extremely* exceptional circumstances here. Most exceptional, at the show cause hearing, Plaintiff threatened to kill Defendants. But these exceptional circumstances, in my view, militate *against* rewarding Defendant for his extreme misconduct.

\* \* \*

For these reasons, I would affirm the judgment of the district court dismissing Plaintiff's complaint with prejudice. Thus, I respectfully dissent.

# A P P E N D I X

## Lawsuits filed by Plaintiff Jasmine Paul Sanchez
## in the United States District Court for the District of Nevada

| 1. | *Sanchez v. Ely State Prison*, No. 18-cv-317 | Filed: June 29, 2018 |
|---|---|---|
| | | Closed: Dec. 15, 2020 |
| | | Settled by global settlement conference. |
| | | Appeal dismissed for lack of jurisdiction prior to settlement conference. |
| 2. | *Sanchez v. Ely State Prison*, No. 18-cv-373 | Filed: Aug. 8, 2018 |
| | | Closed: Sept. 17, 2019 |
| | | Dismissed for lack of jurisdiction. |
| | | Appeal deemed frivolous. |
| 3. | *Sanchez v. Gittere*, No. 18-cv-475 | Filed: Oct. 5, 2018 |
| | | Closed: Dec. 15, 2020 |
| | | Settled by global settlement conference. |
| 4. | *Sanchez v. Ely State Prison*, No. 18-cv-590 | Filed: Dec. 13, 2018 |
| | | Closed: Jan. 24, 2019 |
| | | Dismissed for failure to file application to proceed *in forma pauperis* or pay the filing fee. |
| | | Appeal dismissed for lack of jurisdiction. |
| 5. | *Sanchez v. Bralower*, No. 19-cv-431 | Filed: July 29, 2019 |
| | | Closed: Dec. 15, 2020 |
| | | Settled by global settlement conference. |
| 6. | *Sanchez v. Gittere*, No. 19-cv-432 | Filed: July 29, 2019 |
| | | Closed: Dec. 15, 2020 |
| | | Settled by global settlement conference. |

| | | |
|---|---|---|
| 7. | *Sanchez v. Jones*, No. 19-cv-447 | Filed: Aug. 1, 2019<br><br>Closed: Dec. 15, 2020<br><br>Settled by global settlement conference. |
| 8. | *Sanchez v. Kirchen*, No. 19-cv-448 | Filed: Aug. 1, 2019<br><br>Closed: Dec. 15, 2020<br><br>Settled by global settlement conference. |
| 9. | *Sanchez v. Homan*, No. 19-cv-481 | Filed: Aug. 12, 2019<br><br>Closed: Aug. 24, 2020<br><br>Dismissed for failure to state a claim. |
| 10. | *Sanchez v. Gittere*, No. 19-cv-492 | Filed: Aug 15, 2019<br><br>Closed: Dec. 15, 2020<br><br>Settled by global settlement conference. |
| 11. | *Sanchez v. Homan*, No. 19-cv-527 | Filed: Aug. 23, 2019<br><br>Closed: Dec. 15, 2020<br><br>Settled by global settlement conference. |
| 12. | *Sanchez v. Rose*, No. 19-cv-557 | Filed: Sept. 9, 2019<br><br>Closed: Dec. 15, 2020<br><br>Settled by global settlement conference. |
| 13. | *Sanchez v. Manning*, No. 19-cv-757 | Filed: Dec. 203, 2019<br><br>Closed: Dec. 15, 2020<br><br>Settled by global settlement conference. |
| 14. | *Sanchez v. Wickham*, No. 20-cv-291 | Filed: May 18, 2020<br><br>Closed: Dec. 15, 2020<br><br>Settled by global settlement conference. |

| 15. | *Sanchez v. Homan*, No. 20-cv-319 | Filed: June 1, 2020 <br><br> Closed: Dec. 16, 2020 <br><br> Settled by global settlement conference. |
|---|---|---|
| 16. | *Sanchez v. Rose*, No. 20-cv-577 | Filed: Oct. 5, 2020 <br><br> Closed: Dec. 15, 2020 <br><br> Settled by global settlement conference. |
| 17. | *Sanchez v. Reubart*, No. 20-cv-610 | Filed: Oct. 29, 2020 <br><br> Closed: Dec. 15, 2020 <br><br> Settled by global settlement conference. |
| 18. | *Sanchez v. Ely State Prison*, No. 21-cv-292 | Filed: July 6, 2021 <br><br> Closed: Feb. 28, 2022 <br><br> Dismissed for failure to state a claim. <br><br> Appeal deemed frivolous. |
| 19. | *Sanchez v. Sharp*, No. 21-cv-311 | Filed: July 22, 2021 <br><br> Closed: Aug. 22, 2023 <br><br> Dismissed by summary judgment finding no constitutional violations. |
| 20. | *Sanchez v. Johnson*, No. 21-cv-362 | Filed: Aug. 16, 2021 <br><br> Closed: Nov. 17, 2023 <br><br> Dismissed for failure to effect service. |
| 21. | *Sanchez v. Sharp*, No. 21-cv-408 | Filed: Sept. 9, 2021 <br><br> Closed: Oct. 25, 2023 <br><br> Dismissed by summary judgment finding no constitutional violations. <br><br> Plaintiff declared a vexatious litigant. |

| 22. | *Sanchez v. Rose*, No. 21-cv-475 | Filed: Nov. 8, 2021<br><br>Closed: May 16, 2022<br><br>Dismissed for failure to state a claim.<br><br>Appeal deemed frivolous. |
|---|---|---|
| 23. | *Sanchez v. Ely State Prison*, No. 22-cv-76 | Filed: Feb. 9, 2022<br><br>Closed: May 29, 2024<br><br>Dismissed by summary judgment finding no constitutional violations. |
| 24. | *Sanchez v. Rigney*, No. 22-cv-109 | Filed: Feb. 28, 2022<br><br>Closed: Mar. 26, 2024<br><br>Dismissed by summary judgment finding no constitutional violations. |
| 25. | *Sanchez v. Reubart*, No. 22-cv-133 | Filed: Mar. 18, 2022<br><br>Closed: May 6, 2022<br><br>Dismissed for failure to pay the filing fee.<br><br>Appeal dismissed for failure to prosecute. |
| 26. | *Sanchez v. Saucedo*, No. 22-cv-141 | Filed: Mar. 23, 2022<br><br>Closed: Mar. 26, 2024<br><br>Dismissed by summary judgment finding no constitutional violations. |
| 27. | *Sanchez v. Reubart*, No. 22-cv-167 | Filed: Apr. 11, 2022<br><br>Closed: Feb. 7, 2023<br><br>Dismissed for failure to pay the filing fee. |
| 28. | **Sanchez v. Rigney, No. 22-cv-259*** | **\*The instant case.** |
| 29. | *Sanchez v. Cornutt*, No. 23-cv-21 | Filed: Jan 17, 2023<br><br>Closed: June 15, 2023<br><br>Dismissed for failure to pay the filing fee. |

| 30. | *Sanchez v. Denney*, No. 23-cv-52 | Filed: Feb. 6, 2023<br><br>Closed: Apr. 3, 2023<br><br>Dismissed for failure to pay the filing fee. |
|-----|-----|-----|
| 31. | *Sanchez v. Pickens*, No. 23-cv-89 | Filed: Mar. 6, 2023<br><br>Closed: July 18, 2023<br><br>Dismissed for failure to pay the filing fee. |
| 32. | *Sanchez v. Baldwin*, No. 23-cv-126 | Filed: Mar. 22, 2023<br><br>Closed: Apr. 10, 2023<br><br>Dismissed for failure to state a claim. |
| 33. | *Sanchez v. Reubart*, No. 23-cv-616 | Filed: Apr. 20, 2023<br><br>Closed: July 6, 2023<br><br>Dismissed for failure to pay the filing fee. |